**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

CONSTELLIUM ROLLED PRODUCTS
RAVENSWOOD, LLC,

                Plaintiff,

v.                              CIVIL ACTION NO.   2:18-cv-01404

UNITED STEEL, PAPER AND FORESTRY,
RUBBER, MANUFACTURING, ENERGY, ALLIED
INDUSTRIAL AND SERVICE WORKERS
INTERNATIONAL UNION, AFL-CIO/CLC, et al.,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Constellium Rolled Products Ravenswood, LLC's ("Constellium") Motion to Vacate Arbitration Award.  (ECF No. 28.)  For reasons stated more fully below, Plaintiff's Motion to Vacate Arbitration Award is **DENIED**.

*I.    BACKGROUND*

Plaintiff Constellium is a Delaware limited liability company with its principal place of business located in Ravenswood, West Virginia.  (ECF No. 1 at ¶ 1.)  Defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/ CLC and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC,   Local   5668 (collectively, the "Union"), are an international labor organization

and local chapter that represent certain hourly maintenance and production employees at Constellium's Ravenswood, West Virginia plant. (ECF No. 1 at ¶ 2.)

### A. *Dispute that Led to Arbitration*

This consolidated action arises out of Constellium's unilateral decision to alter benefits available to its Medicare-eligible retirees. (*See* ECF No. 12 at 4–5, ¶ 13–14.) The Union and Constellium have been parties to several collective bargaining agreements ("CBA"s) from 1999 to the present. (*See* ECF No. 11 at 4.) The most recent CBA, and the one that is the subject of this action, was entered into by the parties on September 19, 2017 and is effective through September 19, 2022. (ECF No. 12 at 2, ¶ 5.)

Article 10 of the CBA establishes a grievance procedure for disputes between the parties. (*Id.* ¶ 6.) It defines a grievance as, "any differences . . . between the Company and the Union as to the meaning or application of the provisions of this Agreement, or as to any question relating to the wages, hours of work, or other conditions of employment of  any employee[.]" (ECF No. 12-1 at 11 (CBA).)  The Article further establishes a four-step process for resolving grievances with the final step being arbitration. (*See id.*)  In order to reach arbitration, the CBA provides that a representative from the International Union must appeal a Step 3 denial of a grievance within 30 days. (*See id.* at 12.)

Article 10 also establishes the jurisdiction and authority of the arbitrator. (ECF No. 12-1 at 13 (CBA).)  In pertinent part, this Article states

> The [arbitrator] shall have jurisdiction and authority only to interpret, apply or determine compliance with the provisions of this Agreement, memoranda, supplements, etc., insofar as shall be necessary to the determination of grievances appealed to the [arbitrator].   The [arbitrator] shall not have jurisdiction or authority to add to, detract from or alter in any way the provisions of this Agreement, memoranda, supplements, etc.

2

(*Id.*)

Article 15 of the CBA, governs current and retired employees' health benefits and states the following:

    A.    Group Insurance

    1.    The group insurance benefits shall be set forth in booklets entitled Employees' Group Insurance Program and Retired Employees' Group Insurance Program, and such booklets are incorporated herein and made a part of this 2017 Labor Agreement by such reference.

    2.    It is understood that this Agreement with respect to insurance benefits is an agreement on the basis of benefits and that the benefits shall become effective  on September 19, 2017, except as otherwise provided in the applicable  booklet, and further that such benefits shall remain in effect for the term of this 2017 Labor Agreement.

(*See id.* at 16.)    This benefit language is virtually identical to the language in previous CBAs, with the only difference being the date of the identified CBA and the effective date.  (*See* ECF No. 5 at 3.)

The parties also negotiated for and appended a "Cap Letter" to the CBA, which outlined the benefits for employees who retired on or after January 1, 2003.  (*See* ECF No. 12-1 at 18.) The Cap Letter further states that these retirees are eligible for retiree medical coverage and establishes the average annual contributions that Constellium would pay for all healthcare benefits per each participating retiree who retired on or after January 1, 2003.  (*See id.*)  The Parties also memorialized benefits in a Retired Employees' Group Insurance Program Booklet that refers to the summary plan description ("SPD") for retiree health benefits.  (*See* ECF No. 5 at 3, n.1.) However, the parties disagree as to whether this booklet refers to the 1995 SPD or 2005 SPD. (*See id.*)   Nevertheless, both SPDs provide for group medical and drug coverage for retirees which are to remain in effect for the term of the CBA.   (*See id.*; *see also* ECF No. 6 at 5.)

On August 24, 2018, Constellium sent a letter to its Medicare-eligible retirees stating that, starting January 1, 2019, Constellium was terminating the employer-provided group medical and drug coverage for Medicare-eligible retirees and, instead, these retirees could purchase supplemental Medicare insurance from Aon Retiree Health Exchange ("Aon").   (*See* ECF No. 12-5 at 1.)   The letter also stated that Constellium was establishing Health Reimbursement Accounts ("HRA"s) into which Constellium would deposit $4,500 per year for each retiree and his or her spouse.   (*See id.*) These retirees were required to sign up for coverage with Aon by December 7, 2018 or forfeit the ability to utilize Aon or receive any deposit by Constellium into an HRA in the future. (*See id.*)

On September 7, 2018, the Union filed a grievance pursuant to the grievance process outlined in Article 10 of the CBA.   (*See* ECF No. 12-6.)   This grievance stated that Constellium "made a unilateral change to the Contract Agreement dated September 19[,] 2017 regarding the agreed to cap letters which is encompassed with this Contract of September 19[,] 2017 . . . ."   (*Id.*) The grievance further requested that Constellium cease and desist this unilateral change.   (*Id.*)

On October 2, 2018, Constellium denied the grievance stating that the change did not violate the CBA and that, to the extent that the change impacted retirees who retired under previous CBAs, the change was allowed under the Fourth Circuit's decision in *Barton v. Constellium Rolled Prod.-Ravenswood, LLC*, 856 F.3d 348 (4th Cir. 2017).   (ECF No. 12-7.)   On November 2, 2018, Constellium filed an action for declaratory judgment requesting a declaration from this Court regarding Constellium's ability to make unilateral changes to the health plan for the above group of retirees.   (ECF No. 1.)   The Union subsequently filed an action for a preliminary injunction on November 7, 2018 and requested that the Court issue a preliminary injunction to stop

Constellium from implementing the above healthcare changes prior to an arbitration award. (2:18-cv-1414, ECF No. 1.)   On December 4, 2018, this Court granted the Union's motion for a preliminary injunction and ordered Constellium not to terminate its provision of healthcare benefits to its Medicare-eligible retirees pending arbitration.   (ECF No. 16.)

### B.  The Arbitration Award

The dispute was thereafter submitted to an Arbitrator, Peter R. Meyers ("the Arbitrator"). (ECF No. 28-3.)   On September 16, 2019, the Arbitrator issued an award sustaining the Union's grievance and ordered Constellium to "[make] whole" all affected employees.   (*Id.* at 23.)   The Arbitrator found that the grievance was not governed or barred by the doctrines of *res judicata* or collateral estoppel based on the *Barton* litigation.   (*Id.* at 13–16.)   In particular, the Arbitrator stated that the issue in *Barton* turned on the question of whether the retirees' health benefits were vested.   (*Id.* at 12–13.)   The Arbitrator contrasted this with the claim before him, reasoning that "the Union's substantive claims here do not depend on the nature of the benefits in question, whether vested or durational."   (*Id.*)   Rather, he found that the claim presented to him focused entirely on the terms of the 2017 CBA and how those terms applied to Constellium's proposed unilateral change.   (*Id.* at 13.)   Therefore, the Arbitrator found the Union's claim to be "separate and distinct" from the claim raised in *Barton*.   (*Id.*)

The Arbitrator also reasoned that the Union was not barred from raising this issue before him based on the *Barton* litigation.   (*Id.* at 14.)   The Arbitrator based this on the federal court's exercise of supplemental jurisdiction over contract-interpretation claims: "[T]he federal courts possibly could have exercised supplemental jurisdiction to hear and resolve such claims, even though federal courts do not have subject-matter jurisdiction over these claims."   (*Id.* at 14.)

Finding that Constellium could not concretely establish that the *Barton* court would have exercised jurisdiction over "contract-interpretation claims," the Arbitrator reasoned it would be inappropriate for him to prohibit the Union from bringing such claims before him. (*Id.* at 15.)

Ultimately, the Arbitrator determined that Constellium violated the parties' CBA "when it unilaterally changed the health insurance benefits made available to its hourly Medicare-eligible retirees who retired before the current [CBA] took effect." (*Id.* at 23.) He based this on an interpretation of the 2017 CBA, the 2005 SPD, and the 2017 Cap Letter, which he found obligated Constellium to maintain retiree benefits through the term of the 2017 CBA. (*Id.* at 21.) Furthermore, he recognized that Constellium was not "forever locked" into maintaining the current retiree benefits, but that such changes could not be made in the middle of the term of the CBA. (*Id.* at 21–22.) Rather, such changes could be made upon the expiration of a CBA or with the implementation of a new agreement. (*Id.* at 22.)

### C.   Present Motion

Constellium now asks this Court to vacate the Arbitrator's award pursuant to the Federal Arbitration Act. (ECF No. 28.) Constellium filed this Motion on December 11, 2019. (*Id.*) After the parties agreed to extend the time to respond, (ECF No. 30), the Union filed a timely response on January 27, 2020. (ECF No. 32.) Constellium filed its reply on February 14, 2020. (ECF No. 33.) As such, this motion is fully briefed and ripe for adjudication.

## II.   STANDARD OF REVIEW

"[J]udicial review of an arbitration award in federal court is 'severely circumscribed' and 'among the narrowest known at law.'" *Jones v. Dancel*, 792 F.3d 395, 401 (4th Cir. 2015) (quoting *Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 478 (4th Cir. 2012)); *see also PNGI Charles Town*

*Gaming, LLC v. Mawing*, 603 Fed.Appx. 137, 137–38 (4th Cir. 2015) ("In fact, 'the scope of judicial review for an Arbitrator's decision is among the narrowest of law because to allow full scrutiny of such awards would frustrate the purpose of having arbitration at all . . . .'") (citation omitted).   A court's review, then, "must determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it."   *Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l. Union*, 76 F.3d 606, 6085 (4th Cir. 1996).

The Supreme Court has held that a court "must" confirm an arbitration award "unless" a party to the arbitration shows that the award should be vacated under § 10 of the Federal Arbitration Act. *See Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). Pursuant to § 10, an arbitration award can only be vacated on the following four grounds:

> (1) when the award was procured by corruption, fraud, or undue means; (2) when there was evident partiality or corruption on the part of an Arbitrator; (3) when an Arbitrator was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior causing prejudice to the rights of any party; or (4) when an Arbitrator exceeded his or her powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10.   Additionally, the Fourth Circuit has held that "an arbitration award may be vacated when the Arbitrator 'manifestly disregards' the law." *Jones*, 792 F.3d at 401 (citing *Wachovia Sec.*, 671 F.3d at 483).

### III.    DISCUSSION

In its motion to vacate, Constellium argues that the doctrines of *res judicata* and collateral estoppel apply to its initial unilateral action, and that the Arbitrator's decision manifestly disregarded the application of these doctrines.   (ECF No. 29 at 5–9.)   Constellium asserts that the application of *res judicata* and collateral estoppel represent an "independent ground meriting

vacatur of the award," (*Id.* at 7), but further assert five additional grounds which all relate to the Arbitrator's analysis of *res judicata* and collateral estoppel. (*Id.* at 7–16.) Essentially, Constellium argues that the Arbitrator's award manifestly disregarded the law of *res judicata* and collateral estoppel; relied on misstatements of fact such that the Arbitrator exceeded or imperfectly executed his powers; failed to draw its essence from the present CBA because the Arbitrator ignored the parties' adoption of the holdings in *Barton*; and violated the public policies supporting *res judicata* and collateral estoppel. (*Id.*) Constellium additionally argues that the Arbitrator exceeded his authority by issuing an award that does not draw its essence from the parties CBA because the parties' agreement does not cover past retirees. (*Id.* at 17.) Finally, Constellium offers evidence that its proposed changes stand to benefit the retirees, while recognizing it is not an independent ground for vacatur. (*Id.* at 18.)

The Court addresses each of these arguments in turn, beginning with whether the Arbitrator manifestly disregarded the principles of *res judicata* and collateral estoppel.

### A. Manifest Disregard

In order to show manifest disregard of the law, a plaintiff must show that: "(1) the disputed legal principle is clearly defined and is not subject to reasonable debate; and (2) the arbitrator refused to apply that legal principle." *Wachovia Sec.*, 671 F.3d at 483. *See also Long John Silver's Rests., Inc. v. Cole*, 514 F.3d 345, 349 (4th Cir. 2008) ("In order to secure judicial relief on such grounds, it must be shown that the arbitrator, in making his ruling, was aware of the law, understood it correctly, found it applicable to the case before [him], and yet chose to ignore it in propounding [his] decision.") (internal quotation omitted). The manifest disregard standard is "not an invitation to review the merits of the underlying arbitration." *Wachovia Sec.*, 671 F.3d at 483.

8

The plaintiff bears the burden of proving that the arbitrator did more than just misconstrue or misapply the law. *Id.* at 479 n.5, 481. Thus, "[a]n arbitration award is enforceable even if the award resulted from a misinterpretation of law, faulty legal reasoning or erroneous legal conclusion[.]" *Upshur Coals Corp. v. UMWA Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991).

Because Constellium raises the manifest disregard standard as to both *res judicata* and collateral estoppel, the Court addresses each in turn. For the reasons discussed more fully below, the Court finds that the Arbitrator did not manifestly disregard either doctrine.

### a.   Res Judicata

"There are three elements necessary to trigger claim preclusion by res judicata: (1) a judgment on the merits in a prior suit resolving (2) claims by the same parties or their privies, and (3) a subsequent suit based on the same cause of action." *Aliff v. Joy Mfg. Co.*, 914 F.2d 39, 42 (4th Cir. 1990). Despite the relatively simple formulaic recitation of these elements, there is no "simple test" to apply to a claim to determine whether it is precluded by *res judicata*. *Id.* at 43. Every case will have different facts, and those facts will need to be applied within the framework of the doctrine. *Id.*

In the *Barton* litigation, Constellium announced that it intended to negotiate changes[1] to the health benefits of retirees who had retired prior to January 1, 2003. *Barton*, 856 F.3d at 351. The Union refused to bargain over this issue. *Id.* Therefore, Constellium notified the Union that it intended to make these changes unilaterally beginning on January 1, 2013. *Id.* On that day, Constellium made those changes. *Id.* The Union and several retirees who were to be affected by this change brought a lawsuit against Constellium and alleged that the changes violated the

---

[1] The changes included extending a cap on contributions Constellium made to retiree health benefits and freezing its Medicare Part B premium reimbursement amount for all hourly retirees at $99.90. *Barton*, 856 F.3d at 351.

parties' CBAs in violation of § 301 of the Labor Management Relations Act ("LMRA") and § 502 of Employee Retirement Income Security Act ("ERISA").   *Id.*

Following discovery, the parties filed cross motions for summary judgment before United States District Judge Joseph R. Goodwin.   *Barton*, 2016 WL 51262.   The parties argued that the claims turned on a single issue: Whether the retirees had a vested right to the health benefits.   *Id.* at *3.   Judge Goodwin found that the benefits did not vest because of the clear and unambiguous durational clauses contained in the prior CBAs.   *Id.* at *4.   These durational clauses established that the benefits were to "remain in effect for the term of this . . . Labor Agreement."   *Id.* at *2. Because this language unambiguously established that the parties did not intend for the benefits to vest, the court found that Constellium did not violate the parties' CBA.   *Id.* at *4.

On appeal, the Fourth Circuit held that the benefits did not vest, also basing its finding on the "explicit durational language."   *Barton*, 856 F.3d at 352–53.   In reaching this conclusion, the Fourth Circuit also examined the SPDs and the Cap Letters.   *Id.* at 353–54.   The court found that the language contained within the SPDs and Cap Letters only bolstered the conclusion that the benefits did not vest.   *Id.* at 354–55.   The Fourth Circuit ultimately affirmed the decision of the district court.   *Id.* at 356.

Here, the Court cannot agree that the Arbitrator manifestly disregarded the application of *res judicata* to the dispute between the parties.   The first two elements are presumed met, as both Constellium and the Union were parties in the *Barton* litigation, which saw a judgment on the merits.   *See Barton v. Constellium Rolled Products-Ravenswood, LLC*, Civ. Action No. 2:13-cv-03127, 2016 WL 51262 (S.D. W. Va. Jan. 4, 2016) *aff'd by* 856 F.3d 348 (4th Cir. 2017).   This Court, cognizant of its narrow scope of review, does not decide whether *res judicata* applies in

this context, but rather only decides whether the Arbitrator manifestly disregarded the law.   The

Court cannot conclude that the Arbitrator did.

Constellium's argument fails because the Arbitrator demonstrably weighed the arguments

of the parties, applied the law to the facts, and found that *res judicata* did not apply:

> I find that a clear understanding of the *Barton* litigation reveals that the claims
> raised there are separate and distinct from what the Union is arguing in the instant
> arbitration proceeding.   Before the federal courts in *Barton*, the Union presented
> two claims based solely upon federal law, specifically citing ERISA and LMRS
> [*sic*].   These claims rested upon the Union's allegation that the retiree benefits at
> issue there had vested.   As will be discussed more fully below, the Union did not
> raise any claims before the federal courts in *Barton* based upon the proper
> interpretation and application of the parties' collective bargaining agreement under
> accepted principles of contract interpretation in labor and employment law.   It is
> immediately evident that the claims raised through the grievance at issue were not
> raised in *Barton*.

(ECF No. 28-3 at 13–14.)

Under the manifest disregard analysis, the Court cannot vacate an award simply because

the arbitrator misconstrued or misapplied the law.   *See Wachovia Sec.*, 671 F.3d at 483.   Rather,

a plaintiff must show that there is a clearly defined legal principle that is not subject to reasonable

debate and that the arbitrator refused to heed that legal principle.   *Id.* at 483.   This requires a

showing that the arbitrator recognized the law or principle, understood it, found it applicable before

him, and still refused to abide by it.   *Long John Silver's*, 514 F.3d at 349.   Despite Constellium's

consternation with the Arbitrator's award, Constellium has failed to show manifest disregard as to

*res judicata*.

### b.  Collateral Estoppel

Collateral estoppel, otherwise referred to as "issue preclusion," is a subset of the *res*

*judicata* doctrine.   *See In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 326 (4th Cir.

2004).   Like *res judicata*, collateral estoppel "forecloses the relitigation of issues of fact or law

11

that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [collateral estoppel] is asserted had a full and fair opportunity to litigate."   *Id.* (quoting *Sedlack v. Braswell Servs. Group, Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)).   To establish collateral estoppel, the proponent must show that

> (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*Id.*

Constellium argues that the Arbitrator manifestly disregarded the law of collateral estoppel when he recognized that collateral estoppel was at issue, but then failed to analyze it and summarily stated that the law did not apply.   (ECF No. 29 at 9.)   Constellium asserts that the Arbitrator "attempted the ruse of shielding his award by stating the issue of collateral estoppel without discussing it," and cites *Clinchfield Coal Co. v. Dist. 28, United Mine Workers of Am. & Local Union No. 1452*, 720 F.2d 1365, 1369 (4th Cir. 1983) to stand for the proposition that this is a basis for vacating the award.   (ECF No. 29 at 9.)

The Union, however, argues that the Arbitrator did address collateral estoppel, in that he opined that the *Barton* courts did not consider "contract-interpretation claims" such as the one before the Arbitrator.   (ECF No. 32 at 12.)   Because the Arbitrator found that the *Barton* courts did not "actually determine" those contract-interpretation claims, (*Id.*), the Union claims the award is immune from review and not subject to collateral estoppel.

Again, mindful of the limited scope of review of the award, this Court cannot say that the Arbitrator manifestly disregarded the law of collateral estoppel.   Indeed, the question of whether

the Union could have brought the so-called "contract-interpretation claims" before the *Barton* courts—which would then have subsequently barred the Union from asserting the issue before the Arbitrator—is a question not easily answered.   Regardless, the Court need not reach this analysis, as the Arbitrator's award did not manifestly disregard the law of collateral estoppel.   Simply, the Court cannot say that the Arbitrator's analysis "fell beyond the scope of a reasonable debate."   *See Jones*, 792 F.3d at 403.

Far from completely ignoring the issue, as Constellium argues, the Arbitrator did in fact analyze the application of collateral estoppel, even if the analysis itself was inartful, if not ambiguous.   (ECF No. 28-3 at 14–15.)   For example, the Arbitrator found that "[t]he federal courts deciding the *Barton* litigation were not asked to address contract-interpretation claims of the type made here, and they accordingly did not consider and/or resolve any such claims."   (*Id.* at 15.)   The Arbitrator additionally found that, unlike the core issue in *Barton*, the claims presented before him did not depend on the nature of the benefits, i.e., whether the benefits were vested.   (*Id.* at 12.)   The Arbitrator even labelled the issue as "something of a red herring in this arbitral proceeding."   (*Id.*)   Further, the Arbitrator, mistakenly or not, expressed hesitation as to whether the federal courts in *Barton* would have exercised their jurisdiction to hear such contract-interpretation claims had they been brought by the Union.[2]   (*Id.*)   Even if the Arbitrator's analysis is somewhat ambiguous, and even uncertain, he did address the argument such that this Court cannot accept Constellium's argument that it was ignored.   But, even if the award is ambiguous,

---

[2] This Court cannot determine whether the Arbitrator meant that the contract-interpretation claims in *Barton* would have been ordered to arbitration, much like the dispute in this very matter, or whether he implied that federal courts lacked jurisdiction to interpret the contract.   However, this determination is not of significance to the Court's overall findings regarding the award.

ambiguity alone cannot be a reason to vacate an award.  *See Brown & Pipkins, LLC v. Service Employees International Union*, 846 F.3d 716, 724 (4th Cir. 2017) ("To require an arbitrator to address every single provision of any relevance whatsoever in a contract would be to require an arbitrator's award to be free of ambiguity—a standard we have rejected.").

Moreover, under the manifest disregard standard, the Court cannot replace an arbitrator's findings with its own, absent a showing that the arbitrator refused to apply a clearly defined and recognized principle.  *See Wachovia Sec., LLC v. Brand*, 671 F.3d 472, 473 (4th Cir. 2012).  The Court cannot overturn an award even if it believed that the arbitrator misinterpreted the law. *Jones*, 792 F.3d at 401 (quoting *Wachovia Sec.*, 671 F.3d at 478 n.5).  However, because the Court's review under the manifest disregard standard is not "an invitation to review the merits of the underlying arbitration or establish that the arbitrator misconstrued or misinterpreted the law," the Court's analysis ends here.  *Id.* at 402 (internal quotations and citations omitted).  This Court cannot say that the Arbitrator manifestly disregarded the law as to collateral estoppel.

### B.  Exceeded Authority – Misstatements of Fact Relating to Barton Litigation

As its next basis for vacatur, Constellium argues that the Arbitrator's decision rests on "clear misstatements of historical fact" and renders the award "baseless" and "without reason or support."  (ECF No. 29 at 11.)  Constellium argues that the Union did in fact bring a contract interpretation claim in the *Barton* litigation, leading to the Arbitrator's disregard of the law of *res judicata*.  (*Id.*)  Further, Constellium argues that the Arbitrator ignored the "implicit" holding in *Barton*, that "past retirees' benefits did not outlive the CBA under which each respective individual retired."  (ECF No. 33 at 15.)  Because of these failures, Constellium maintains that the

Arbitrator "exceeded his powers or so imperfectly executed them that vacatur of the award is proper."   (*Id.* at 15.)

The Union again maintains that the Arbitrator's award should be upheld on this basis because of the limited scope of review the Court undertakes.   (ECF No. 32 at 13.)   But, even if the review was not so limited, the Union argues that there was no error on part of the Arbitrator. (*Id.*)   Instead, the Union argues, the Arbitrator focused on the substantive differences between the grievance before him and the claims brought in the *Barton* litigation to distinguish the two actions. (*Id.* at 14–15.)   Finally, the Union asserts that the Arbitrator cannot be found to have violated the implicit holding of *Barton* because there was no such holding.   (*Id.* at 15–16.)

Despite the deference afforded to arbitration awards, courts should overturn awards when the "award violates well-settled and prevailing public policy, fails to draw its essence from the [CBA] or reflects the arbitrator's own notions of right and wrong."   *Mountaineer Gas Co.*, 76 F.3d at 608 (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Therefore, an arbitrator cannot "'ignore the plain language of the contract' to impose his 'own notions of industrial justice.'"   *PPG Indus. Inc. v. Int'l Chem. Workers Union Council of United Food and Commercial Workers*, 587 F.3d 648, 652 (4th Cir. 2009) (quoting *Misco*, 484 U.S. at 38).   The court's review, then, "must determine only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it."   *Mountaineer Gas Co.*, 76 F.3d at 608.   In order to determine whether the arbitrator did his job, the court should analyze "(1) the arbitrator's role as defined by the Agreement; (2) whether the award ignored the plain language of the Agreement; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the Agreement's proscribed limits."   *Id.* (citing *United*

*Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).   An arbitrator's award fails to draw its essence from the CBA when the award is not "rationally inferable from the contract."   *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5 (4th Cir.1998)).

The parties' CBA establishes that "[t]he [arbitrator] shall have jurisdiction and authority only to interpret, apply or determine compliance with the provisions of this Agreement, memoranda, supplements, etc., insofar as shall be necessary to the determination of grievances appealed to the [arbitrator]."   (ECF No. 12-1 at 13.)   This Court cannot overturn an arbitration award simply because a party, or even the reviewing court, believes the arbitrator misinterpreted the law.   *See Jones*, 792 F.3d at 405–06.   *See also Upshur Coals*, 933 F.2d at 229 ("Not only is an arbitrator's fact finding and contract interpretation accorded great deference, but its interpretation of the law is accorded deference as well.").   "[A] plaintiff seeking relief under this provision bears the 'heavy burden' of showing that the arbitrator acted outside the scope of the authority granted by the parties in their contract, by 'issuing an award that simply reflects his own notions of economic justice.'"   *See Jones*, 792 F.3d at 405 (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013)).   Constellium has failed to meet that burden.

Constellium's argument that the Arbitrator failed to consider or recognize the implicit holding of *Barton* holds little merit.   The Arbitrator examined the decisions and concluded that Constellium had construed the *Barton* cases too broadly:

> In arguing that the *Barton* decisions recognized its authority to make unilateral changes to group health benefits applicable to those who retired prior to the effective date of the current Agreement, [Constellium] has stretched the *Barton* decisions beyond their logical and reasonable meaning.   The *Barton* decisions are

> far narrower than [Constellium] suggests, in that they focus on the finding that retiree health benefits are not vested, leading to the conclusion that the Union could not sufficiently prove the federal claims that it advanced in that litigation. The *Barton* decisions do not state that [Constellium] may unilaterally change retiree health benefits at any time, or even that [Constellium] may unilaterally change retiree health benefits at all.

(ECF No. 28-3 at 20–21.)   Simply, the Arbitrator did what he was asked to do.   *See Long John Silver's*, 514 F.3d at 353.   The Arbitrator determined the procedural issues, (*See* ECF No. 16 at 11), and then he applied the facts to the parties' CBA to determine whether the CBA had been violated.   (*See* ECF No. 28-3.)   The Court does not determine whether the Arbitrator did his job well, correctly, or reasonably, but simply, whether he did it.   *Long John Silver's*, 514 F.3d at 349.   Therefore, the Court finds that the Arbitrator did not exceed or so imperfectly execute his authority in rendering his award.

### C.  Essence of the Agreement

Constellium's next argument is that the Arbitrator's award failed to draw its essence from the parties' CBA because the Arbitrator ignored the holdings in *Barton*.   (ECF No. 29 at 13.) Constellium argues that the parties adopted the holdings of the *Barton* litigation into their agreement because there has been no material change in the provisions.   (*Id.* at 14–15.) Therefore, Constellium argues that the Arbitrator "exceeded his powers" by ignoring or misreading binding precedent and "rewrote the parties' agreement."   (*Id.* at 15.)

The Union argues that the parties could not have adopted a holding that would allow Constellium "the right to make unilateral changes to past retirees' health benefits," (*See id.*), because the *Barton* courts made no such holding.   (ECF No. 32 at 16.)   The Union argues that Constellium's "persistent mischaracterization" of *Barton* will not change its holding, and therefore, Constellium's argument should be dismissed.   (*Id.*)

17

This Court has already addressed the Arbitrator's decision as to how *Barton* affects the instant grievance.   What Constellium argues is nothing more than an "impermissible attack on the correctness of the arbitrator's decision."   *Brown & Pipkins, LLC v. Serv. Emps. Int'l Union*, 846 F.3d 716, 724 (4th Cir. 2017).   As discussed more fully above, the Arbitrator considered and analyzed the decisions in *Barton* and found that they did not apply.   Finding that the decisions did not apply, he weighed the merits of the parties' arguments and interpreted the agreement. Constellium's argument that the Arbitrator's award failed to draw its essence from the agreement fails.

### D.  Public Policy

As its next ground for vacatur, Constellium argues that the Arbitrator's award violates the well-settled and prevailing public policies of *res judicata* and collateral estoppel.   (ECF No. 29 at 15.)   Constellium argues that these public policies provide a finality to disputes between parties and frees individuals from the cost, time, and effort of litigation.   (*Id.*)   Constellium bases this argument on the Union allegedly withholding alternative theories of relief, such that they can "simply argue that theory on a different day in a new action."   (*Id.*)   Because the Arbitrator's award threatens these public policies, Constellium asserts the award should be vacated.

The Union counters that the Arbitrator's award raises no such concerns for the simple fact that the Arbitrator found that the doctrines of *res judicata* and collateral estoppel did not apply. (ECF No. 32 at 17.)   Further, the Union cautions the Court against the use of "public policy" as the grounds for vacatur, describing its use as a "two-edged sword."   (*Id.* (internal citation omitted.))   The Union then cites the public policy favoring arbitration as a means of "private, peaceful resolution" as a prime example of these countervailing interests.   (*Id.*)

Constellium's argument again stems from its perceived failure by the Arbitrator to correctly apply *res judicata* and collateral estoppel.   As discussed more fully above, the Court rejects this argument relating to those doctrines.   As a final note, this Court is wary to vacate an arbitration award based on a public policy argument.   Indeed, the public policy argument is often a two-edged sword.   *See Westvaco Corp. v. United Paperworkers Int'l Union, AFL-CIO ex rel. Local Union 676*, 171 F.3d 971, 977 (4th Cir. 1999).   Vacating an award on public policy grounds runs a dangerous risk of "erod[ing] the strong public policy favoring the private, peaceful resolution of industrial disputes."   *Id.*   Nonetheless, because the Court has already addressed the Arbitrator's decision regarding *res judicata* and collateral estoppel, Constellium's argument fails.

### E.  Exceeded Authority – Express Contractual Language

Constellium argues two final grounds for vacating the Arbitrator's award, both unrelated to *res judicata* and collateral estoppel.   First, Constellium argues that the Arbitrator exceeded his authority by deciding an issue not presented to him when he stated that "[a] unilateral change[] . . . may only take effect in conjunction with the implementation of a new [CBA]."   (ECF No. 29 at 17 (alterations in original).)   Second, Constellium argues that the Arbitrator impermissibly read a "loophole" into the parties' CBA when the Arbitrator determined that the parties had bargained over benefits for past retirees.   (*Id.* at 17–18.)   Rather, Constellium asserts that the parties' CBA only pertains to employees, not past retirees.   (*Id.*)   Therefore, Constellium argues the Arbitrator exceeded his authority and the award does not draw its essence from the agreement.

The Union counters that the Arbitrator did not exceed his authority because the statement Constellium identified was not the Arbitrator's ultimate finding.   (ECF No. 32 at 18.)   Further, the Union argues that the Arbitrator interpreted the CBA to find that the parties had indeed

bargained over retiree benefits.   (*Id.*)   Finally, the Union notes that Constellium's argument that they had only bargained over current employees is inconsistent with the 2017 CBA, the parties' past practice, and Constellium's position in *Barton*.   (*Id.*)

First, the Arbitrator was asked to decide two issues:

1.   Whether the instant grievance is governed or barred by application of the doctrines of *res judicata* and/or collateral estoppel based upon the *Barton* litigation?

2.   Whether [Constellium] violated the parties' current collective bargaining agreement when it unilaterally changed the health insurance benefits made available to its hourly Medicare-eligible retirees who retired before the current Agreement took effect?

(ECF No. 28-3 at 2.)   The statement the Arbitrator makes that Constellium takes issue with appears on page 22 of the award: "A unilateral change, like a negotiated change, may only take effect in conjunction with the implementation of a new collective bargaining agreement."   (*Id.* at 22.)

Upon review of the Arbitrator's award, the Court finds no error with this out-of-context statement.   Viewed in its entirety, it is readily apparent that the Arbitrator did not exceed the scope of the issues presented to him:

As [Constellium] itself has indicated on Page 33 of its Opening Brief here, "after the expiration of each CBA since at least 1988, the Company had the option of making unilateral changes to the benefits offered to retirees, as opposed to current employees."   While this Arbitrator is not confirming whether such changes may be made on a unilateral basis, the Agreement language makes clear that any changes to these benefits may take effect only with the implementation of the parties' next contract.   Consequently, I hold only that the retiree benefits in question must be maintained, unchanged, through the entire term of the 2017 Agreement.

***

If [Constellium] wishes to attempt a unilateral change to retiree benefits, then any such change cannot take effect during the term of the 2017 Agreement.   A

20

> unilateral change, like a negotiated change, may only take effect in conjunction
> with the implementation of a new collective bargaining agreement.   Of course, if
> [Constellium] does attempt to implement such a unilateral change, then the Union
> may challenge that action through the courts or through arbitration.

(*Id.* at 21–22.)   The Arbitrator did not dictate when Constellium could make unilateral changes, but rather interpreted the parties' CBA and applied it to the unilateral change Constellium proposed.   In his analysis, the Arbitrator interpreted the CBA to mean that the benefits must be maintained through the entire term of the agreement.   The CBA grants the Arbitrator authority to "interpret, apply or determine compliance with the provisions of this Agreement, memoranda, supplements, etc.," (*see* ECF No. 12-1 at 13), and that is precisely what the Arbitrator did.   *See Westvaco Corp.*, 171 F.3d at 975.   Constellium's first argument fails.

Next, Constellium argues that the Arbitrator "impermissibly read into the CBA language that does not exist."   (ECF No. 29 at 17.)   Essentially, Constellium argues that the Union does not represent past retirees, and the parties did not bargain over past retirees' benefits, so therefore, the Arbitrator impermissibly granted an award he was not authorized to bestow when he found the past retirees' benefits were secured through the term of the CBA.   (*Id.* at 17–18.)

This argument fails as well.   Under the limited scope of review, the Court determines whether the Arbitrator did his job.   *Mountaineer Gas Co.*, 76 F.3d at 608.   This requires the Court to determine "(1) the arbitrator's role as defined by the Agreement; (2) whether the award ignored the plain language of the Agreement; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the Agreement's proscribed limits."   *Id.*   An arbitrator's award fails to draw its essence from the CBA when the award is not "rationally inferable from the contract."   *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235 (4th Cir. 2006) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n.5 (4th Cir.1998)).   Under this

review, the Court finds the Arbitrator performed his role within the authority granted to him by the parties' agreement.

The parties' CBA establishes that "[t]he [arbitrator] shall have jurisdiction and authority only to interpret, apply or determine compliance with the provisions of this Agreement, memoranda, supplements, etc., insofar as shall be necessary to the determination of grievances appealed to the [arbitrator]."  (ECF No. 12-1 at 13 (CBA).)   Recognizing that the Union has a "statutory obligation" to represent current employees, and that no such obligation exists as to past retirees, the Arbitrator found that 2017 CBA, which contains a "specific reference to and provision for retiree group health insurance benefits," covers past retirees.  (ECF No. 28-3 at 16–17.)   The Arbitrator also recognized that, while the parties may not have bargained extensively over the issue, and in fact only agreed to "carry forward language from prior contracts," the inclusion of Article 15(A) within the 2017 CBA was sufficient by itself to demonstrate the parties negotiated over past retiree benefits.  (*Id.* at 17.)   Based on the foregoing, the Court finds that the Arbitrator exercised the authority granted to him by the parties and that his award drew its essence from the CBA.

### F.  Evidence to Benefit Past Retirees

While not a ground for vacatur of the Arbitrator's award, Constellium makes a final offer to present evidence, to the extent it is relevant, that the proposed unilateral change will benefit past retirees.  (ECF No. 29 at 18.)   The Union, of course, disputes that the evidence is relevant to this Court's review or is otherwise beneficial to retirees, and itself offers, even "while entirely irrelevant," evidence that the Union offered a proposed Union-administered Medicare plan in response to the unilateral changes proposed by Constellium.  (ECF No. 32 at 19, n.6.)

22

Neither party's evidence is a ground for vacatur or affirmation of the Arbitrator's award. The evidence is wholly irrelevant to this review.   Therefore, the Court denies Constellium's offer to present further evidence.

## IV.   CONCLUSION

For the reasons discussed above, the Court **DENIES** Constellium's Motion to Vacate Arbitration Award.   (ECF No. 28.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      June 11, 2020

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE